## THE EMPRESS OF RUSSIA.

### CHINA & JAPAN TRADING CO., Limited, v. CANADIAN PAC. RY. CO.

District Court, S. D. New York.
Oct. 5, 1932.

Single & Hill, of New York City (Robert E. Hill, of New York City, of counsel), for libelant.

Hardin, Hess, Eder & Freschi, of New York City (Harold B. Elgar, of New York City, of counsel), for respondent.

PATTERSON, District Judge.

This is a suit in admiralty to recover for damage to cargo. Two hundred and seventy cases of cotton flannel owned by the libelant were carried by the respondent's vessel Empress of Russia from Vancouver to Shanghai. The bill of lading covering the carriage contained the usual clauses that the carrier should not be liable for damage caused by perils of the sea or by unseaworthiness provided due diligence should be used to make the vessel seaworthy.

The libelant's goods were stowed in the orlop deck of No. 5 compartment. On arrival at Yokohama it was discovered that one hundred and three cases were water-soaked. The water had come from the deck above, lower tween deck, having flowed over the hatch coaming of that deck down to the orlop deck. It had entered the lower tween deck through a small hole in the storm valve fitted to a waste pipe, the valve and pipe being between the side of the ship and the cargo battens. There is no proof definitely determining the origin of the hole, but from its nature it is fairly certain that corrosion of the metal caused it. The water thus admitted to the lower tween decks was not carried off by the scuppers. Considerable quantities remained on the floor, and, as already stated, there was an overflow to the deck below where the libelant's goods were stored. The weather encountered by the Empress of Russia in the voyage across the Pacific was somewhat rough. For two or three days the wind was at gale force.

██ We start with the settled rule that the carrier is liable unless it can show that the damage came about through a cause validly specified in the bill of lading as one for the consequences of which no liability was assumed. The Rosalia (C. C. A.) 264 F. 285. The exception as to damage caused by peril of the sea is obviously inapplicable. There was no storm of sufficient violence to bring the case within this category. The Giulia (C. C. A.) 218 F. 744; The Rosalia, supra.

██ The exception as to damage caused by unseaworthiness means that the carrier is exempted only where due diligence has been exercised prior to the commencement of the voyage to render the vessel seaworthy. That is the maximum extent of the carrier's freedom from liability for unseaworthiness under section 2 of the Harter Act (46 USCA § 191). The Carib Prince, 170 U. S. 655, 18 S. Ct. 753, 42 L. Ed. 1181; The Willdomino (C. C. A.) 300 F. 5, affirmed 272 U. S. 718, 47 S. Ct. 261, 71 L. Ed. 491. In the present case the damage was due solely to unseaworthiness of the Empress of Russia at the commencement of the voyage. The presence of the hole in the valve rendered it unseaworthy. The same is true as to the failure of the scuppers to perform their proper function. The case therefore turns upon the issue of fact whether due diligence was used to detect these imperfections prior to the commencement of the voyage, and upon this issue the carrier has the burden of proof. The only showing as to the valve is that a rather casual examination of the hold was made. It is true that the valve was not in plain sight and that a careful inspection would have necessitated removal of the cargo battens. A finding as to due diligence regarding the defective valve is not required, however, since no damage would have been

wrought on the libelant's goods if the scuppers had been in working order, and since it is clear that due diligence was not used to test the efficacy of the scuppers. The proof shows that soya beans had been stowed in the lower tween deck of the compartment in question on the previous voyage and that a sticky liquid had exuded from this cargo. The floor had been washed, but nothing had been done as to the scuppers beyond looking into them and observing that they seemed to be clean. The scuppers were large enough to have taken off the water that came into the hold through the small aperture. There can be little doubt that a blocking of the drains by soya juice was what caused the injury to the libelant's goods, and a test of the scuppers by running water down them with a hose would have revealed their clogged condition. Under the circumstances, the failure to test the scuppers was a lack of proper care to render the vessel seaworthy at the commencement of the voyage. The damage was caused, not by the entry of water, but by its accumulation. The Cornelia (D. C.) 15 F.(2d) 245.

There will be a decree in favor of the libelant.